# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,<br><br>Plaintiff,<br><br>v.<br><br>SALESFORCE.COM, INC.,<br><br>Defendant. | § CIVIL ACTION 6:20-CV-1170-ADA<br>§<br>§<br>§<br>§<br>§ PATENT CASE<br>§<br>§<br>§<br>§<br>§ JURY TRIAL DEMANDED<br>§ |

## RESPONSE OPPOSING DEFENDANT'S
## RULE 12(b)(6) MOTION FOR PARTIAL DISMISSAL

There is no merit to Salesforce.com Inc.'s ("Salesforce") allegation that the Complaint filed by WSOU Investments, LLC ("WSOU") fails to state a plausible claim for indirect infringement. First, WSOU need not allege "pre-suit knowledge," as Salesforce erroneously insists, because WSOU's indirect-infringement claim seeks damages only for post-suit indirect infringement.[1] Second, WSOU's detailed allegations are more than sufficient to allege (a) the specific intent required for induced infringement and (b) a substantial non-infringing use required for contributory infringement. The complaints in the cases on which Salesforce relies bear no resemblance to WSOU's detailed complaint. Salesforce's motion should, therefore, be denied.

Although Salesforce's motion should be denied outright, if the Court is inclined to grant any part of the motion, WSOU respectfully requests that the Court allow WSOU to amend its Complaint. Fed. R. Civ. P. 15(a)(2) (providing that leave to amend should be freely given when justice so requires.)

**I.       WSOU need not allege "pre-suit knowledge" to support an indirect infringement claim that (a) accrued during litigation and (b) seeks only post-suit damages.**

WSOU need not allege "pre-suit knowledge" to support an indirect infringement claim that accrued during litigation and seeks only post-suit damages. The Federal Circuit has never held that a cause of action for indirect infringement must be based on "pre-suit" knowledge or that a party is barred from asserting an indirect infringement claim seeking only post-suit damages. To the contrary, the Federal Circuit has repeatedly recognized that a party "***may seek to pursue claims that accrue during the pendency of a lawsuit[.]***" See e.g., *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1345 (Fed.Cir.2012) (emphasis added). Indirect infringement is a cause of action. As a cause of action, it may accrue during the pendency of a lawsuit, and if it does, a plaintiff should be allowed to pursue it. *Id.* To hold otherwise is to ignore clear Federal Circuit precedent. *See id.*

While some district court opinions have erroneously embraced the "pre-suit knowledge

---

[1] WSOU reserves the right to amend and allege pre-suit damages for indirect infringement after discovery opens.

rule," there are compelling reasons to reject it. To the extent this Court considers its decisions in *Castlemorton Wireless, LLC v. Bose Corp.*, No. 6:20-CV-00029-ADA, 2020 WL 6578418 (W.D. Tex. July 22, 2020) or *Parus Holdings Inc. v. Apple Inc.*, No. 6:19-cv-432, D.I. 54 (W.D. Tex. Feb. 20, 2020) to embrace the "pre-suit knowledge rule," WSOU respectfully urges this Court to reconsider.

The most compelling and basic reason to reject the "pre-suit knowledge rule" is the well-established rule, stated above, that a party "may seek to pursue claims that accrue during the pendency of a lawsuit[.]" *Id.* The "pre-suit knowledge rule" (erroneously accepted only by some district courts) violates this well-established rule (repeatedly recognized by higher courts).

Salesforce relies, in part, on *Aguirre v. Powerchute Sports, LLC*, No. SA-10-CV-0702 XR, 2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011), but *Aguirre* relies on a Delaware case (*Xpoint*) that has since been rejected by several Delaware courts.[2] In *Walker Digital*, for example, the Court stated:

> The court acknowledges that this result is inconsistent with its prior decisions in *Xpoint Techs. v. Microsoft Corp.*, 730 F.Supp.2d 349 (D.Del.2010), and *EON Corp. IP Holdings LLC v. FLO TV Inc.*, 802 F.Supp.2d 527 (D. Del. 2011). Given the ease of amendment, the limitation of damages to post knowledge conduct, and in the interests of judicial economy, the court finds that the better reasoning is to allow a complaint that satisfies Rule 8 to proceed to discovery rather than dismissing it for lack of pre-filing knowledge when, by the time the motion to dismiss has been filed, defendant in fact has the requisite knowledge as pled by plaintiff.

*Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d at 566. Delaware reached the same conclusion in *IOENGINE, LLC v. PayPal Holdings, Inc.*, CV 18-452-WCB, 2019 WL 330515, at *4 (D. Del. Jan. 25, 2019), finding "no purpose that would be served by the formality of requiring IOENGINE to file an amended complaint in order to be allowed to assert knowledge of the patents during the period following the filing of the original complaint." Other courts, including courts in

---

2   Delaware courts are split on whether a defendant's knowledge of infringement must come from some source other than the original complaint to support a claim for indirect infringement. WSOU's amended complaint correctly states that "[s]everal Delaware courts have since rejected" the rule in *Aguirre* and quotes Delaware authority directly rejecting *Aguirre*.

Delaware and the Eastern District of Texas, have reached the same conclusion.[3]

Salesforce also relies on *VLSI Tech. LLC v. Intel Corp.*, CV 18-966-CFC, 2019 WL 1349468, at *2 (D. Del. Mar. 26, 2019), which argues knowledge gained from the filing of a complaint cannot "create" a cause of action. The "pre-suit knowledge" rule, as it is stated in *VLSI*, should be rejected for multiple reasons.

First, *VLSI* is directly at odds with *Aspex Eyewear* and other Federal Court precedent recognizing that a party may pursue claims that accrue during the pendency of litigation. *See Aspex Eyewear*, 672 F.3d at 1345.

Second, the *VLSI* rule is merely a persuasive sounding semantical argument that exalts form over function. By giving notice of the defendant's indirect infringement, an original complaint does not "create" a claim. Rather, it puts the defendant on notice. For indirect infringement to occur, the defendant must choose to continue its indirect infringement despite the notice provided in the complaint. It is the defendant's continued infringement after receiving the complaint that creates the claim – not the complaint.

Third, even if the *VLSI* rule is correct as applied to original complaints, it cannot rationally apply to amended complaints. An amended complaint that alleges a defendant has had knowledge of its indirect infringement since at least the filing of the original complaint is not "creating" a claim. It is also not "creating" the required knowledge. It is merely alleging the obvious fact that the defendant has knowledge of its indirect infringement. Indeed, by the time an amended complaint is filed, the defendant has notice of its indirect infringement not only because of the filing of the original complaint, but from other direct communications with the plaintiff.

Fourth, refusing to allow a patent holder to pursue an indirect infringement claim that

---

[3] *See also Firstface Co., Ltd. v. Apple, Inc.*, 2019 WL 1102374, *1-2 (N.D. Cal. 2019); *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355–57 (Fed. Cir. 2018); *Tierra Intelectual Borinquen, Inc. v. ASUS Computer International, Inc.,* 2014 WL 1233040, *2 (E.D. Tex. 2014); *Telecomm Innovations, LLC v. Ricoh Co.*, 966 F.Supp.2d 390, 393 (D. Del. 2013); *E.I Du Pont de Nemours & Co. v. Heraeus Holding GmbH*, No. 11-773, 2012 WL 4511258, at *6 (D. Del. Sept. 28, 2012).

accrues during the pendency of the lawsuit will only invite multiple lawsuits on the *same* patents against the *same* defendant – a first case for direct infringement and a later case for indirect infringement. The Federal Circuit recognizes that "in patent cases, *res judicata* does not apply to bar the assertion of new claims acquired during the pendency of a litigation that could have been, but were not, litigated or adjudicated in the action." *Target Training Intern., Ltd. v. Extended Disc N. Am., Inc.*, 645 Fed. Appx. 1018, 1026 (Fed. Cir. 2016). Further, while a party "may seek to pursue claims that accrue during the pendency of a lawsuit, the party is not required to do so, and *res judicata* will not be applied to such accruing claims if the party elects not to have them included in the action." *Aspex Eyewear*, 672 F.3d at 1345. A patent holder seeking to litigate a claim for indirect infringement that accrued during the pendency of the lawsuit is not only fully within its rights to do so but is also trying to take the most efficient course for the parties and the court.

Fifth, the *VLSI* rule creates a legal fiction (pretending a defendant who *has* actual knowledge does not) that leads to absurd results.[4] Under the *VLSI* rule, as Salesforce interprets it, a defendant who first learns of its misconduct through a filed complaint is *forever* immune from liability for post-filing indirect infringement (even if the defendant is, in fact, indirectly infringing).[5] Thus, the instrument designed to put a defendant on notice of misconduct becomes a shield to that misconduct. Under this extreme rule, even if the defendant later learns of its indirect infringement through sources that *VLSI* would otherwise consider sufficient (such as a letter from the patent holder or the defendant's own internal investigation), the defendant can ignore this knowledge and continue to indirectly infringe with impunity. A letter enclosing an *unfiled* complaint is sufficient to put a defendant on notice of indirect infringement, but the same letter, if it contains a copy of a *filed* complaint, is not. A defendant who receives a letter hours or minutes *before* a complaint is filed can be held liable for its indirect infringement, but a defendant who

---

[4] It is "a fundamental and well-established principle of statutory construction that absurd and ridiculous results must be avoided where the language of a statute will permit." *Hensel v. United States*, 3 U.S. Cust. App. 117, 119 (Ct. Cust. App. 1912).

[5] This is incorrect even under *VLSI* (which applied only to the complaint filed in *that* case) but is the rule Defendant ask this Court to adopt.

4

receives the same letter hours or minutes *after* a complaint is filed may continue to indirectly infringe without consequence. Such a rule creates a perverse incentive for defendants (who have unique access to information about when they gained knowledge) to conceal information about when they receive knowledge of infringement. Such a rule also places an unnecessary burden on parties and courts to conduct intensive discovery and fact finding on exactly *when* a defendant learned of its infringement (as a difference of hours or days may determine whether the defendant can be held liable for post-filing conduct). A patent holder who attempts to avoid the negative consequences of such a rule by sending a letter shortly before filing suit may find itself either (1) embroiled in discovery and factual disputes about exactly *when, where, how,* and to *whom* the letter was delivered or (2) on the receiving end of a preemptively filed declaratory judgment action in a forum of the infringer's choice.

Sixth, district courts that have adopted the "pre-suit knowledge rule" have confused the knowledge required for willful infringement with the knowledge required for indirect infringement. Section 284 of the Patent Act allows a court to "enhance damages" for infringement "up to three times the amount found or assessed." *See* 35 USC § 284. Given the absence of statutory guidance on *when* enhanced damages should be awarded under § 284, the courts have fashioned their own tests, which generally require willfulness. *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1928, 195 L. Ed. 2d 278 (2016) (abrogating stringent test created by *In re Seagate Technology*, LLC, 497 F.3d 1360, 1374 (Fed.Cir.2007) but recognizing enhanced damages should still "generally be reserved for egregious cases typified by willful misconduct"). In *In re Seagate Technology*, the Federal Circuit fashioned a test (later abrogated by *Halo Electronics*) for awarding enhanced damages under § 284 that requires willful infringement. In doing so, it explained:

> Further outweighing any benefit of extending waiver to trial counsel is the realization that in ordinary circumstances, willfulness will depend on an infringer's prelitigation conduct. It is certainly true that patent infringement is an ongoing offense that can continue after litigation has commenced. However, when a complaint is filed, a patentee must have a good faith basis for alleging willful infringement. Fed. R. Civ. Pro. 8, 11(b). So a willfulness claim asserted *in the original complaint* must necessarily be grounded exclusively in the accused infringer's pre-filing conduct. By contrast, when an accused infringer's post-filing

5

> conduct is reckless, a patentee can move for a preliminary injunction, which generally provides an adequate remedy for combating post-filing willful infringement. **A patentee who does not attempt to stop an accused infringer's activities in this manner should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct**. Similarly, if a patentee attempts to secure injunctive relief but fails, it is likely the infringement did not rise to the level of recklessness.

*In re Seagate Technology*, 497 F.3d at 1374 (emphasis added). While *In re Seagate Technology* arguably supports the idea that under "ordinary circumstances" *willfulness* depends on an infringer's prelitigation conduct, it does not support the idea that indirect infringement should be limited to pre-filing conduct. To the contrary, it expressly recognizes that "patent infringement is an ongoing offense that can continue after litigation has commenced" and states only that *enhanced* damages for such infringement should be limited to pre-filing conduct. *Id.*

Willful infringement is not a cause of action (*see VLSI Tech. LLC*, 2019 WL 1349468, at *1) and is therefore not a "claim" that can necessarily "accrue during the pendency of a lawsuit." This arguably makes *Aspex Eyewear* inapplicable to willful infringement. There is no similar justification for refusing to apply *Aspex Eyewear* to a cause of action for indirect infringement. Therefore, as the District of Delaware stated, there is "no legal impediment to having an indirect infringement cause of action limited to post-litigation conduct," as there arguably is for allegations of *willful infringement*. *Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d at 565 n. 7 (emphasis added) (citing *In re Seagate Technology*, LLC, 497 F.3d at 1374 (Fed.Cir.2007)).

**II.     WSOU adequately alleges intent for induced infringement.**

Salesforce incorrectly characterizes WSOU's Complaint as offering nothing more than citations to Salesforce's promotional materials and a conclusory allegation of inducement. WSOU alleges significantly more. The Complaint sets out detailed allegations of direct infringement, identifying the accused products and functionalities. *See* Complaint, Count One ¶¶ 4-17. The Complaint further includes screenshots and citations to Salesforce's online user manuals, which contain instructions and demonstrations for how to use the accused functionalities in an infringing manner. *Id.*

The Complaint further alleges that Salesforce's customers directly infringe the patent by

using the Accused Product in accordance with Salesforce's instructions and that Salesforce provides customers instructions on how to infringe the patent with its user manuals and advertising. *Id.* ¶ 18-19. This allegation, ***coupled*** with WSOU's detailed discussion identifying the accused functionalities in preceding paragraphs of the Complaint and the screenshots of advertisements and instructions on Salesforce's website, is more than enough to give rise to a reasonable inference that Salesforce intended to induce. *See Maxell Ltd. v. Apple Inc.*, 5:19-CV-00036-RWS, 2019 WL 7905455, at *4 (E.D. Tex. Oct. 23, 2019) ("The preceding discussion identifying the accused functionalities and the screenshots of advertisements and instructions on Apple's website, coupled with this allegation, are more than enough to give rise to a reasonable inference that Apple intended to induce infringement.").

WSOU's pleadings are ***at least*** as detailed as those the Federal Circuit deemed sufficient to defeat a motion to dismiss. *Nalco Co. v. Chem-Mod*, LLC, 883 F.3d 1337, 1355 (Fed. Cir. 2018) (denying motion to dismiss where pleadings alleged defendants inducing actions included "providing instructions, support, and technical assistance for the use of the [accused instrumentality]."); *see also Script Security Solutions L.L.C. v. Amazon.com, Inc*., 170 F. Supp. 3d 928, 936 (E.D. Tex. 2016) (denying a 12(b)(6) motion to dismiss allegations of induced infringement where "the defendants induced customers to infringe the patents by instructing them in advertising and promotion to use the accused products in an infringing way"); *Canon, Inc. v. TCL Electronics Holdings Ltd.*, No. 2:18-CV-00546-JRG, 2020 WL 1478356, *5-*6 (E.D. Tex. Mar. 25, 2020) (denying motion to dismiss inducing and contributory infringement claims despite the lack of specifics in how the material the accused infringers disseminated in connection with the accused product encouraged infringement); *Motiva Patents, LLC v. Sony Corp.*, 408 F. Supp. 3d 819 (E.D. Tex. Sept. 27, 2019) (denying motion to dismiss because complaint contained general allegations that the end-user's of the accused software product were the direct infringers and that the accused infringer through its advertising and instruction manuals encouraged the end user to use the product in an infringing manner).

Salesforce's reliance on *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-cv-752-

7

JRG-JDL, 2015 WL 12850550 (E.D. Tex. Jul. 15, 2015) is misplaced. There, the complaint failed to allege "any facts identifying, even at a basic level, which functionalities of the accused products are at issue, or how the instructions direct customers to use those products in an infringing manner[.]" *Id.* at 4. The Eastern District of Texas refused to apply *Core Wireless* in *Maxell* because the complaint in *Maxell* – like WSOU's complaint – "set[] out in detail allegations of direct infringement, identifying the accused functionalities and accused devices," included "screen-shots and descriptions of Apple's online user manuals and advertisements," and coupled these allegations with an allegation that Apple induced its customers to infringe. *Maxell*, 2019 WL 7905455 at *4. In doing so, *Maxell* reemphasized the recognition in *Core Wireless* "that 'the provision of instructions by an accused infringer may indicate specific intent to induce infringement.'" *Id*. (quoting *Core Wireless*, 2015 WL 12850550, Slip Op. at *4). Other courts have adopted similar reasoning to *Maxell*.[6]

Salesforce's reliance on *Affinity Labs of Texas, LLC v. Blackberry Ltd.*, No. 13-cv-362, 2014 WL 12551207 (W.D. Tex. Apr. 30, 2014) is likewise misplaced. The complaint at issue in *Affinity* did not set out in detail the accused functionality of an accused product, it did not include screenshots and descriptions of Blackberry's user manuals and advertisements, and it did not incorporate by reference detailed infringement contentions containing detailed references to Blackberry's user manuals and advertisement. Unlike here, the complaint there contained only a

---

[6] *See, e.g.*, *Nomadix, Inc. v. Hospitality Core Services LLC*, 2015 WL 1525537, *3 (C.D. Cal. April 3, 2015) (denying motion to dismiss inducing infringement for allegedly not sufficiently pleading intent since the patentee's allegations that the accused infringer provided instructions to use its product in an infringing manner was sufficient); *U.S. Water Services, Inc. v. Novozymes A/S*, 2014 WL 2604997, *4–*6 (W.D. Wis. June 11, 2014) (denying motion to dismiss indirect infringement claims in view of allegations that the accused infringers "instructed potential customers to buy their product and use it in the same way as plaintiffs' patented methods"); *Telecomm Innovations, LLC v. Ricoh Co., Ltd.*, 966 F. Supp. 2d 390, 393–94 (D. Del. Aug. 6, 2013) (finding it sufficient that "plaintiff at bar alleges that defendants provided technical support and instructions to their customers on how to use products in such a way as to infringe the patented invention").

8

bald assertion of induced infringement.

Salesforce cannot reasonably argue that the *extraordinary* level of detail provided by WSOU fails to provide sufficient notice as to which functionalities stand accused of infringement or how Salesforce's manuals and advertisements—which include detailed instructions for configuring the accused functionalities to perform in an infringing manner—induce its users to directly infringe.

**III.     WSOU adequately alleges intent for contributory infringement.**

Salesforce's argument concerning contributory infringement is similarly defective. Salesforce relies on *Inhale, Inc v. Gravitron, LLC*, No. 1-18-CV-762-LY, 2018 WL 7324886 (W.D. Tex. Dec. 10, 2018), a case involving a complaint with barebones allegations of infringement[7] that bear no resemblance to WSOU's complaint.

A well-pled allegation addressed to the lack of substantial non-infringing uses is sufficient to satisfy the knowledge element of contributory infringement." *Motiva*, 408 F. Supp. 3d at 834. "Requiring [a patentee] to prove that [the accused infringer]'s software component only has a single use—instead of simply alleging as much—would 'effectively require[ ] [the patentee to prove, pre-discovery, the facts necessary to win at trial,'" and the law does not require this. *Id*. at 836 n.6 (citation omitted). Here, WSOU's detailed allegations outlining Salesforce's direct infringement and identifying examples of infringing features and components of the accused products, coupled with WSOU's well-pled allegation addressed to the lack of a substantial non-infringing use, is more than enough to plausibly claim contributory infringement.

---

[7]     Inhale's claim for infringement, stated ***in its entirety***: "Upon information and belief, Defendant has infringed and continues to infringe ... indirectly through contributory ... infringement, claim 1 or 2 of the ['563] Patent by manufacturing, importing, offering for sale, and selling in the United States the GRAV Grinder." *Inhale, Inc v. Gravitron, LLC*, 1-18-CV-762-LY, 2018 WL 7324886, at *3 (W.D. Tex. Dec. 10, 2018) ("Beyond this conclusion, Inhale's complaint lacks any factual allegations permitting the court to reasonably infer the GRAV Grinder is a component of a patented invention, is especially made for use in infringing the '563 Patent, and has no substantial non-infringing use.").

## CONCLUSION

WSOU pleads factual content that allows this Court to draw the reasonable inference that Salesforce is liable for the misconduct alleged. Salesforce has not shown that WSOU would not be entitled to relief under any set of facts or any possible theory that it could prove consistent with the allegations in the Complaint, and its motion should be denied.

Dated: June 21, 2021

Respectfully submitted,

<u>*/s/ Ryan S. Loveless*</u>
James L. Etheridge
Texas State Bar No. 24059147
Ryan S. Loveless
Texas State Bar No. 24036997
Travis L. Richins
Texas State Bar No. 24061296
Brett A. Mangrum
Texas State Bar No. 24065671
Jeffrey Huang
ETHERIDGE LAW GROUP, PLLC
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, Texas 76092
Telephone: (817) 470-7249
Facsimile: (817) 887-5950
Jim@EtheridgeLaw.com
Ryan@EtheridgeLaw.com
Travis@EtheridgeLaw.com
Brett@EtheridgeLaw.com
Jhuang@EtheridgeLaw.com

Mark D. Siegmund
State Bar No. 24117055
mark@waltfairpllc.com
Law Firm of Walt, Fair PLLC.
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432

**ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

I certify that the foregoing document was served upon all counsel of record via electronic case filing in accordance with the Federal Rules of Civil Procedure on June 21, 2021.

>*/s/ Ryan S. Loveless*
>Ryan S. Loveless