# EXHIBIT C



# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/160,658 | 06/15/2011 | Yigang Cai | 809186 | 3811 |

50525          7590          01/11/2013

DUFT BORNSEN & FISHMAN, LLP
1526 SPRUCE STREET
SUITE 302
BOULDER, CO 80302

| EXAMINER |
|---|
| HUA, QUAN M |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2645 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 01/11/2013 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

| *Office Action Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 13/160,658 | CAI ET AL. |
| | Examiner | Art Unit | |
| | QUAN M. HUA | 2645 | |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1)☒ Responsive to communication(s) filed on <u>29 November 2012</u>.

2a)☐ This action is **FINAL**.       2b)☒ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____ ; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims

5)☒ Claim(s) <u>1-20</u> is/are pending in the application.

    5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☒ Claim(s) <u>1-20</u> is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☐ Claim(s) _____ are subject to restriction and/or election requirement.

\* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

## Application Papers

10)☐ The specification is objected to by the Examiner.

11)☒ The drawing(s) filed on <u>15 June 2011</u> is/are: a)☒ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

## Priority under 35 U.S.C. § 119

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All   b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    \* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☒ Information Disclosure Statement(s) (PTO/SB/08)
Paper No(s)/Mail Date <u>12/29/2012, 12/15/2011</u>.

3)☐ Interview Summary (PTO-413)
Paper No(s)/Mail Date. _____ .

4)☐ Other: _____ .

Application/Control Number: 13/160,658                                                            Page 2

Art Unit: 2645

## DETAILED ACTION

1.       Claims (**1-20**) are pending in the instant application.

### *Priority*

2.       No priority claim/documents are received at this time.

### *Information Disclosure Statement*

3.       The information disclosure statements (IDS) submitted on 11/29/2012 and 12/15/2011 in

compliance with the provisions of 37 CFR 1.97.  Accordingly, the information disclosure

statement is being considered by the examiner.

### *Oath/Declaration*

4.       Oath/Declaration as filed (06/15/2011) is noted by the Examiner.

### *Drawings*

5.       Drawing as filed (06/15/2011) is accepted by the Office.

### *Claim Objections*

6.       Claims **1, 7 - 10 and  16-20** are objected to because of the following informalities:  The

claim recites the term "RESTful" which appears to be an abbreviation for the term

*Representational State Transfer*.  The terms are not accompanied by an explanation for the

abbreviation.  Appropriate correction is required.

7.       Claim **8** is objected for insistency in language usage.  Claim 8, in line3 recites "..the send

message.." which is inconsistent in terminology with its antecedent basis "send request" in line

2.  Appropriate correction is required.

Application/Control Number: 13/160,658                                                Page 3

Art Unit: 2645

8.      Claim **17** is objected for insistency in language usage.  Claim 8, in line3 recites "..the

send message.." which is inconsistent in terminology with its antecedent basis "send request" in

line 2.  Appropriate correction is required.

### *Claim Rejections - 35 USC § 101*

35 U.S.C. 101 reads as follows:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

9.      Claims (1-9 and 19-20) are rejected under 35 U.S.C. 101 because the claimed invention is

directed to non-statutory subject matter.

Claim 1 has been evaluated for patent eligibility under 35 USC 101 for system/apparatus

claim type.  Claim 1 recites an *interface* and a *controller*.  According to the instant Specification,

in particular [0074] which states:

"*[0074] Any of the various elements shown in the figures or described herein may be*

*implemented as hardware, <u>software</u>, firmware, or some combination of these…. Moreover,*

*explicit use of the term "processor" or "controller" should not be construed to refer exclusively*

*to hardware capable of executing software, and may implicitly include…<u>logic</u>…<u>module</u>.*"

(emphasis added)

The *interface* and *controller* are therefore not excluded from software embodiments as

expressively stated by [0074] above, thus rendering the system a combination of software under

broadest reasonable interpretation.  The claim is therefore deemed as non-statutory and rejected

under this section.

Application/Control Number: 13/160,658                                                                 Page 4

Art Unit: 2645

Dependent claims 2-9 merely describe further functionalities/steps performed by the

*controller* and the *interface* and do not further introduce any hardware structure.  Claims 2-9 are

thus rejected in light of the dependency on claim 1.

Similarly, the system claim 19 is directed to a system comprising an Application

Programming Interface (API) performing similar operation in claim 1.  The API does not

exclude hardware embodiment according the cited Specification in light the analysis above.

Furthermore, API as known in the art is protocol for routing data structure and routines and

software, thus cannot be considered a physical structure by broadest reasonable interpretation.

The claim is therefore deemed as non-statutory and rejected under this section.

Dependent claim 20 merely describes further functionality/steps performed by the the

interface and do not further introduce any hardware structure.  Claim 20 is thus rejected in light

of the dependency on claim 19.


### *Claim Rejections - 35 USC § 103*

10.     The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in
> section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are
> such that the subject matter as a whole would have been obvious at the time the invention was made to a person
> having ordinary skill in the art to which said subject matter pertains.  Patentability shall not be negatived by the
> manner in which the invention was made.

11.     The factual inquiries set forth in *Graham* v. *John Deere Co.*, 383 U.S. 1, 148 USPQ 459

(1966), that are applied for establishing a background for determining obviousness under 35

U.S.C. 103(a) are summarized as follows:

    1.      Determining the scope and contents of the prior art.
    2.      Ascertaining the differences between the prior art and the claims at issue.

Application/Control Number: 13/160,658                                                 Page 5
Art Unit: 2645

     3.     Resolving the level of ordinary skill in the pertinent art.
     4.     Considering objective evidence present in the application indicating obviousness
            or nonobviousness.

12.     Claims **1-3, 5-12, 14-20** are rejected under 35 U.S.C. 103(a) as being unpatentable over

**Geen** et al. (WO **2009/133544**), hereafter **Geen**, in view of **DeLuca** (US **2012/0023175**).

As to claim 1:

**Geen** discloses A system (*See Fig. 19 – detailed system chart comprising at least the*

*Comprehensive Messaging Server (CMS), Fig. 8 - system structure block diagram*) comprising:

an interface (*See Page 12, lines 5-10, aggregated multi-protocol single interface, See fig.*

*8, the interface comprising a plurality of separate protocol connectors – REST, IMAP, Diameter*

*etc..*) operable to receive a RESTful send operation for sending a Mobile Terminated (MT) text

message from a messaging client (*See Fig. 18 – receive by the CMS the HHTP PUT send*

*operation to user id XYZ (first step), Page 33 – lines 1-9 - the operation is to forward the*

*message as text message to the user XYZ's mobile device*) ;

and a controller operable to convert the RESTful send operation for the MT text message

to a send request that is based on a signaling protocol used in a packet-switched network (*See*

*Page 13, lines 4 through 27 and fig. 18, the send request HTTP PUT, through the CMS, becomes*

*the Short Message (SM) SUBMIT to be transmitted to the SMSC – e.g. part of a packet switch*

*network*);

the interface is further operable to transmit the send request for the MT text message to

the packet-switched network for delivery of the MT text message to a recipient. (*See Page 13,*

*lines 4 through 27 and fig. 18, the Short Message (SM) SUBMIT is  transmitted to the SMSC*

*from the CMS – e.g. part of a packet switch network*)

Application/Control Number: 13/160,658                                                  Page 6
Art Unit: 2645

**Geen** discloses the interface to receive the HTTP PUT message, i.e. the RESTful send operation, from a messaging client.

Except that **Geen** does not explicitly refers the messaging client as a web application.

**DeLuca** however in a related field discloses that a messaging client, such as that of **Geen**, is one of possible implementation of web application (*See DeLuca, [0011]*).

It would have been obvious to one of ordinary skill in the art at the time the invention was made that **Geen**'s messaging client is implemented as a web application because web browsers in which web applications are typically implemented requires little memory space compared to a stand-alone messaging software and reduce the number of software a processor having to manage.  Furthermore, as **Geen** utilizes the RESTful protocol for messaging as indicated above, which are typically used for web applications , one of ordinary skill in the art would construe the message client as a web application.

As to **claim 2**:

**Geen** in view of **DeLuca** discloses all limitations of claim 1 and further discloses the signaling protocol used in the packet-switched network comprises Session Initiation Protocol (SIP). (*See Geen, Page 13, lines 5-10, SIP messaging for SIP enabled-device is among protocols convertible by the CMS 10 to the aggregated single protocol REST, See Page 23, lines 4 to 16 – recipient for CMS to route a message is in SIP domain* )

Application/Control Number: 13/160,658                                        Page 7

Art Unit: 2645

As to **claim 3**:

**Geen** in view of **DeLuca** discloses all limitations of claim 1 and further discloses the

signaling protocol used in the packet-switched network comprises Short Message Peer-to-Peer

(SMPP) protocol.  (*See Geen, Page 13, lines 5-10, SMPP is among protocols convertible by the*

*CMS 10 to the aggregated single protocol REST*)

As to **claim 5**:

**Geen** in view of **DeLuca** discloses all limitations of claim 1 and further discloses the MT

text message comprises a Short Messaging Service (SMS) message. (*See Geen, page 33, lines 3*)

As to **claim 6**:

**Geen** in view of **DeLuca** discloses all limitations of claim 1 and further discloses the MT

text message comprises a Multimedia Messaging Service (MMS) message. (*See Geen, page 33,*

*lines 13-16 – message deposited as MMS transaction*)

As to **claim 7**:

**Geen** in view of **DeLuca** discloses all limitations of claim 1 and further discloses the

interface is further operable to receive a status message from the packet-switched network

indicating a delivery status for at least one of the send request and the MT text message  (*See*

*Geen, Fig. 18 – CMS to receive the 200 OK/XML from the presence server of the recipient*

*network's side to indicate whether a delivery status - i.e. whether the recipient is available for*

*delivery*) ;

Application/Control Number: 13/160,658                                                                Page 8
Art Unit: 2645

the controller is further operable to convert the status message from the signaling

protocol used in the packet-switched network to a RESTful status operation (*See **Geen**, Fig. 18,*

*message 200 Ok is relayed by the CMS to the messaging client in a conversion as the messaging*

*client and the CMS uses the RESTful protocol and thus different than protocol between the CMS*

*and other server as seen in Fig. 5 and Page 13, lines 5-10*);

and the interface is further operable to transmit the RESTful status operation to the web

application (*See **Geen**, Fig. 18, message 200 Ok is relayed by the CMS to the messaging client*)


As to **claim 8**:

Green in view of **DeLuca** discloses all limitations of claim 1 and further disclose the

interface is further operable to receive a send request for a Mobile Originated (MO) text message

from the packet-switched network, wherein the send message for the MO text message is based

on the signaling protocol used in the packet-switched network; (*See **Geen**, Page 35, lines 21 to*

*27, Fig. 19, the Submit (B,A MsgContent) request send from SMSC (packet network) to the CMS*

*via the packet network's respective protocol*)

the controller is further operable to convert the send request for the MO text message to a

RESTful receive operation for receiving the MO text message in the web application

(*See **Geen**, Page 35, lines 21-27, step profile check through Ok (MsgContent_speech) –*

*the CMS convert the received request to an operation for the MO text message to be retrievable*

*by the RESTful-enabled Messaging client A*) ;

and the interface is further operable to transmit the RESTful receive operation for the MO

text message to the web application for delivery of the MO text message to a user of the web

Application/Control Number: 13/160,658                                                        Page 9

Art Unit: 2645

application.  (*See **Geen**, page 35, lines 30 through page 36 line 3, Fig. 19, step transmitting Message (A, MsgContent-Speech for delivery in step (Play (MsgContent-Speech))*)


As to **claim 9**:

Green in view of **DeLuca** discloses all limitations of claim 8 and further disclose the interface is further operable to receive a RESTful status operation from the web application indicating a delivery status for the MO text message (*See **Geen** Fig. 19, the CMS receive the OK (Speech reply) from the Messaging client A via the Media server*);

the controller is further operable to convert the RESTful status operation to a status message that is based on the signaling protocol used in the packet-switched *network (See **Geen**, Fig. 19, the step of Transcode (SpeechReply) is performed by the CMS to convert the reply to the text protocol used by the Client B in the packet switch network (SMSC))*;

and the interface is further operable to transmit the status message to the packet-switched network (*See **Geen**, Fig. 19, the step of transmitting SM SUBMIT from CMS to SMSC*)


As to **claim 10**:

Green discloses a method (*Abstract*) comprising:

receiving a RESTful send operation for sending a Mobile Terminated (MT) text message from a messaging client (*See **Geen**, Fig. 18 – receive by the CMS the HHTP PUT send operation to user id XYZ (first step), Page 33 – lines 1-9 - the operation is to forward the message as text message to the user XYZ's mobile device*);

Application/Control Number: 13/160,658                                                     Page 10
Art Unit: 2645

converting the RESTful send operation for the MT text message to a send request that is

based on a signaling protocol used in a packet-switched network (*See **Geen** Page 13, lines 4*

*through 27 and fig. 18, the send request HTTP PUT, through the CMS, becomes the Short*

*Message (SM) SUBMIT in a protocol supported by the packet-switch network, to be transmitted*

*to the SMSC– e.g. part of a packet switch network*);

and transmitting the send request for the MT text message to the packet-switched

network for delivery of the MT text message to a recipient (*See **Geen** Page 13, lines 4 through*

*27 and fig. 18, the Short Message (SM) SUBMIT is  transmitted to the SMSC from the CMS –*

*e.g. part of a packet switch network*).

**Geen** discloses the interface to receive the HTTP PUT message, i.e. the RESTful send

operation, from a messaging client.

Except that **Geen** does not explicitly refers the messaging client as a web application.

**DeLuca** however in a related field discloses that a messaging client, such as that of

**Geen**, is one of possible implementation of web application (*See **DeLuca**, [0011]).*


It would have been obvious to one of ordinary skill in the art at the time the invention

was made that **Geen**'s messaging client is implemented as a web application because web

browsers in which web applications are typically implemented requires little memory space

compared to a stand-alone messaging software and reduce the number of software a processor

having to manage.  Furthermore, as **Geen** utilizes the RESTful protocol for messaging as

indicated above, which are typically used for web applications , one of ordinary skill in the art

would construe the message client as a web application.

Application/Control Number: 13/160,658                                         Page 11
Art Unit: 2645

As to **claim 11**:

**Geen** in view of **DeLuca** discloses all limitations of claim 10 and further discloses the

signaling protocol used in the packet-switched network comprises Session Initiation Protocol

(SIP). (*See **Geen**, Page 13, lines 5-10, SIP messaging for SIP enabled-device is among protocols*

*convertible by the CMS 10 to the aggregated single protocol REST, See Page 23, lines 4 to 16 –*

*recipient for CMS to route a message is in SIP domain*  )

As to **claim 12**:

**Geen** in view of **DeLuca** discloses all limitations of claim 10 and further discloses the

signaling protocol used in the packet-switched network comprises Short Message Peer-to-Peer

(SMPP) protocol.  (*See **Geen**, Page 13, lines 5-10, SMPP is among protocols convertible by the*

*CMS 10 to the aggregated single protocol REST)*

As to **claim 14**:

**Geen** in view of **DeLuca** discloses all limitations of claim 10 and further discloses the

MT text message comprises a Short Messaging Service (SMS) message. (*See **Geen**, page 33,*

*lines 3*)

As to **claim 15**:

**Geen** in view of **DeLuca** discloses all limitations of claim 10 and further discloses the

MT text message comprises a Multimedia Messaging Service (MMS) message. (*See **Geen**, page*

*33, lines 13-16 – message deposited as MMS transaction*)


As to **claim 16**:

**Geen** in view of **DeLuca** discloses all limitations of claim 10 and further discloses

receive a status message from the packet-switched network indicating a delivery status

for at least one of the send request and the MT text message  (*See **Geen** Fig. 18 – CMS to receive*

*the 200 OK/XML from the presence server of the recipient network's side to indicate whether a*

*delivery status - i.e. whether the recipient is available for delivery*) ;

converting the status message from the signaling protocol used in the packet-switched

network to a RESTful status operation (*See **Geen**, Fig. 18, message 200 Ok is relayed by the*

*CMS to the messaging client in a conversion as the messaging client and the CMS uses the*

*RESTful protocol and thus different than protocol between the CMS and other server as seen in*

*Fig. 5 and Page 13, lines 5-10*);

transmitting the RESTful status operation to the web application (*See **Geen**, Fig. 18,*

*message 200 Ok is relayed by the CMS to the messaging client)*


As to **claim 17**:

Green in view of **DeLuca** discloses all limitations of claim 10 and further disclose

receiving a send request for a Mobile Originated (MO) text message from the packet-switched

network, wherein the send message for the MO text message is based on the signaling protocol

Application/Control Number: 13/160,658                                                                Page 13
Art Unit: 2645

used in the packet-switched network; (*See **Geen** Page 35, lines 21 to 27, Fig. 19, the Submit (B,A*

*MsgContent) request send from SMSC (packet network) to the CMS via the packet network's*

*respective protocol*)

converting the send request for the MO text message to a RESTful receive operation for

receiving the MO text message in the web application

(*See **Geen** Page 35, lines 21-27, step profile check through Ok (MsgContent_speech) –*

*the CMS convert the received request to an operation for the MO text message to be retrievable*

*by the RESTful-enabled Messaging client A*) ;

and transmitting the RESTful receive operation for the MO text message to the web

application for delivery of the MO text message to a user of the web application.  (*See **Geen***

*page 35, lines 30 through page 36 line 3, Fig. 19, step transmitting Message (A, MsgContent-*

*Speech for delivery in step (Play (MsgContent-Speech*)

As to **claim 18**:

Green in view of **DeLuca** discloses all limitations of claim 17 and further disclose

receiving a RESTful status operation from the web application indicating a delivery status for the

MO text message (*See **Geen** Fig. 19, the CMS receive the OK (Speech reply) from the Messaging*

*client A via the Media server*);

converting the RESTful status operation to a status message that is based on the signaling

protocol used in the packet-switched *network (See **Geen** Fig. 19, the step of Transcode*

*(SpeechReply) is performed by the CMS to convert the reply to the text protocol used by the*

*Client B in the packet switch network (SMSC))*;

and transmitting the status message to the packet-switched network  (*See **Geen** Fig. 19,*

*the step of transmitting SM SUBMIT from CMS to SMSC*)


As to **claim 19**:

**Geen** discloses system comprising:

an Application Programming Interface (API) for a web application used in text

messaging (*See Page 12, lines 5-10, aggregated multi-protocol single interface, See fig. 8, the*

*interface comprising a plurality of separate protocol connectors – REST, IMAP, Diameter etc..*);

the API operable to receive a RESTful send operation for sending a Mobile Terminated

(MT) text message from a messaging client (*See Fig. 18 – receive by the CMS the HHTP PUT*

*send operation to user id XYZ (first step), Page 33 – lines 1-9 - the operation is to forward the*

*message as text message to the user XYZ's mobile device*) ;

to convert the RESTful send operation for the MT text message to a send request that is

based on a signaling protocol used in a packet-switched network (*See Page 13, lines 4 through*

*27 and fig. 18, the send request HTTP PUT, through the CMS, becomes the Short Message (SM)*

*SUBMIT to be transmitted to the SMSC – e.g. part of a packet switch network*);

and to transmit the send request for the MT text message to the packet-switched network

for delivery of the MT text message to a recipient.

(*See Page 13, lines 4 through 27 and fig. 18, the Short Message (SM) SUBMIT is*

*transmitted to the SMSC from the CMS – e.g. part of a packet switch network*)

**Geen** discloses the interface to receive the HTTP PUT message, i.e. the RESTful send operation, from a messaging client.

Except that **Geen** does not explicitly refers the messaging client as a web application.

**DeLuca** however in a related field discloses that a messaging client, such as that of **Geen**, is one of possible implementation of web application (*See **DeLuca**, [0011]*).

It would have been obvious to one of ordinary skill in the art at the time the invention was made that **Geen**'s messaging client is implemented as a web application because web browsers in which web applications are typically implemented requires little memory space compared to a stand-alone messaging software and reduce the number of software a processor having to manage.  Furthermore, as **Geen** utilizes the RESTful protocol for messaging as indicated above, which are typically used for web applications , one of ordinary skill in the art would construe the message client as a web application.

As to **claim 20**:

The system of claim 19 wherein: the API is further operable to receive a send request for a Mobile Originated (MO) text message from the packet-switched network, wherein the send request for the MO text message is based on the signaling protocol used in the packet-switched network,  (*See **Geen** Page 35, lines 21 to 27, Fig. 19, the Submit (B,A MsgContent) request send from SMSC (packet network) to the CMS via the packet network's respective protocol*)

to convert the send request for the MO text message to a RESTful receive operation for receiving the MO text message in the web application, (*See **Geen** Page 35, lines 21-27, step*

Application/Control Number: 13/160,658                                             Page 16
Art Unit: 2645

*profile check through Ok (MsgContent_speech) – the CMS convert the received request to an*

*operation for the MO text message to be retrievable by the RESTful-enabled Messaging client A)*

and to transmit the RESTful receive operation for the MO text message to the web

application for delivery of the MO text message to a user of the web application. (*See **Geen** page*

*35, lines 30 through page 36 line 3, Fig. 19, step transmitting Message (A, MsgContent-Speech*

*for delivery in step (Play (MsgContent-Speech)*

13.     Claims **4** and **13** are rejected under 35 U.S.C. 103(a) as being unpatentable over **Geen** in

view of **DeLuca** and in further view of **Magee** et al. (US **2002/0056001**), hereafter **Magee**.

As to **claims 4 and 13**:

**Geen** in view of **DeLuca** discloses all limitations of claim 1 and 10 where the recipient is

located in a UMTS network where the CMS to rout the send operation to (*See Page 23, lines 10-*

*14*).

Except that **Geen** in view of **DeLuca** does not explicitly disclose discloses the signaling

protocol used in the packet-switched network comprises Mobile Application Part (MAP)

protocol.

However, **Magee** in a related field discloses the UMTS network as disclosed by **Geen**

has MAP protocol as the core network signaling protocol (*See Magee [0012] – MAP as core*

*network protocol for UMTS*)

Thus it would have been obvious to one of ordinary skill in the art at the time the

invention was made that **Geen**'s recipient network uses the MAP protocol as disclosed in **Magee**

Application/Control Number: 13/160,658                                          Page 17

Art Unit: 2645

because: as stated by **Magee** in [0012], MAP is a core network signal protocol of the UMTS

network.

## Art Unit Relocation

The Art Unit location of your application in the USPTO has changed.  To aid in

correlating any papers for this application, all further correspondence regarding this

application should be directed to Art Unit 2645.

## *Conclusion*

The prior art made of record and not relied upon is considered pertinent to applicant's

disclosure.

**Clarke** et al. (US **2005/0036498**) – Clarke et al disclosing a system comprising a

protocol interfacing device located in between networks of different protocol (Fig. 1 – 14), in

which the protocol interfacing device comprises proxies to various protocol which connected to a

translator engine 32 to translate operations between devices located in different protocol domains

to realize interworking between said protocols.


Any inquiry concerning this communication or earlier communications from the

examiner should be directed to QUAN M. HUA whose telephone number is (571)270-7232.  The

examiner can normally be reached on Monday through Friday, 8:30 am to 5:00 pm.

Application/Control Number: 13/160,658                                              Page 18
Art Unit: 2645

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Anthony S. Addy can be reached on (571)-272-7795.  The fax phone number for the

organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent

Application Information Retrieval (PAIR) system.  Status information for published applications

may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished

applications is available through Private PAIR only.  For more information about the PAIR

system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR

system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would

like assistance from a USPTO Customer Service Representative or access to the automated

information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/QUAN M HUA/
Examiner, Art Unit 2645